Marie N. Appel (SBN 187483)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6293

Alan J. Borowsky (Admitted *Pro Hac Vice*)
PA ID #308700
aborowsky@forthepeople.com
2005 Market Street, Suite 350
Philadelphia, PA 19103
Telephone: (215) 861-0502
Facsimile: (215) 861-0527

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| S.G., an individual,<br><br>       Plaintiff<br><br>v.<br><br>VAGABOND INN CORPORATION;<br>CHOICE HOTELS<br>INTERNATIONAL, INC. AND<br>WYNDHAM HOTELS AND<br>RESORTS, INC.<br><br>       Defendants. | Case No. 8:21-CV-00955-PSG-KES<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed: May 27, 2021 |

AMENDED COMPLAINT            Case No. 8:21-CV-00955-PSG-KES

COMES NOW the Plaintiff S.G., by and through the undersigned counsel, and respectfully submits her amended complaint for damages and makes the following averments.

### INTRODUCTION

1.      For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country. Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2.      Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation know and have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.      This action for damages is brought by the Plaintiff (hereinafter identified by her initials "S.G."), a survivor of sex trafficking under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA") and Cal. Civ. Code § 52.5.

4.      S.G. met her traffickers in Texas and California in 2009. She was 15 years old and believed she was embarking on a vacation to California. Instead, S.G. was required to sexually service paying strangers while enduring brutal physical abuse, rape, exploitation, psychological torment, kidnapping, and imprisonment at the Defendants' hotels for two (2) years as the Defendants profited.

5.      The Plaintiff now brings this action for damages against the Defendants listed herein. Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that they knew, or at the very least should have known, to be engaging

in sex trafficking in violation of 18 U.S.C. § 1591(a).

6. S.G. was advertised on Backpage.com, abused, and exploited at hotels across Southern California and in Everett, Washington including the Comfort Inn & Suites®, Travelodge®, and Vagabond Inn®.

7. As a direct and proximate result of Defendants' consistent refusals to prevent human trafficking on their hotel properties, S.G. was sex trafficked, sexually exploited, and victimized repeatedly at Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation brand hotels.

8. The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from a sex trafficking venture in which S.G. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a).

## PARTIES

### A. Plaintiff S.G.

9. The Plaintiff, herein identified by her initials S.G., was 15 years old when she was first sold for sex and trafficked throughout California and in Washington for the purposes of commercial sex. The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14).

### B. Defendant Choice Hotels International, Inc.

10. Defendant Choice Hotels International, Inc. (hereinafter "Choice") is one of the largest hotel franchisors in the world and offers public lodging services through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its headquarters in Rockville, Maryland and can be served by its registered agent United States Corporation Company 50 West Broad Street, Suite 1330 Columbus, Ohio 43215.

11. Comfort Inn & Suites® hotels are Choice hotels.

12. As a hotel operator, Defendant Choice controls the training and policies for

its hotels including the Comfort Inn & Suites® hotel where S.G. was trafficked.

13.   Defendant Choice maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Choice brand standards and all local, state, and federal laws.[1]

14.   By and through its relationship with the staff at the Comfort Inn & Suites® hotel where S.G. was trafficked and the hotel guest perpetrator who trafficked her at the Comfort Inn & Suites® hotel, Defendant Choice knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

15.   Choice receives a percentage of the gross room revenue from the money generated by the operations of all Comfort Inn & Suites® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

16.   Choice owns, supervises, and/or operates the Comfort Inn & Suites® at 2485 Hotel Circle Place in San Diego, California under its Comfort® Hotels brand.

17.   Choice is subject to the jurisdiction of this Court because it regularly transacts business in California, operates dozens of hotels in California, contracts to supply services in California, caused indivisible injuries to the Plaintiff in California, and knowingly profited from an illegal sex trafficking venture at the Comfort Inn & Suites® at 2485 Hotel Circle Place in San Diego, California.

**C. Defendant Wyndham Hotels and Resorts, Inc.**

18.   Defendant Wyndham Hotels and Resorts, Inc. (hereinafter "Wyndham") is another of the world's largest hotel companies and offers public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its headquarters in Parsippany, New Jersey and can be served by its registered agent Corporate

---

[1] Choice Hotels, Human Rights Policy available at https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited Mar. 25, 2021).

AMENDED COMPLAINT                                         Case No. 8:21-CV-00955-PSG-KES

3

Creations Network Inc., 3411 Silverside Road, Suite 104, Wilmington, Delaware 19810.

19.    Defendant Wyndham Hotels and Resorts, Inc. is the successor entity to Wyndham Worldwide Corporation and retains successor liability for the wrongful acts of the predecessor.

20.    Travelodge® brand hotels are Wyndham hotels.

21.    As a hotel operator, Defendant Wyndham controls the training and policies for its hotels including the Travelodge® hotel where S.G. was trafficked.

22.    Defendant Wyndham maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.[2]

23.    By and through its relationship with the staff at the Travelodge® hotel where S.G. was trafficked and the hotel guest perpetrator who trafficked her at the Travelodge® hotel, Defendant Wyndham knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

24.    Wyndham receives a percentage of the gross room revenue from the money generated by the operations of all Travelodge® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

25.    Wyndham owns, supervises, and/or operates the Travelodge® at 1011 Oak Street in Bakersfield, California under its Travelodge® by Wyndham brand.

26.    Wyndham is subject to the jurisdiction of this Court because it regularly transacts business in California, operates dozens of hotels in California, contracts to supply services in California, caused indivisible injuries to the Plaintiff in California, and knowingly profited from an illegal sex trafficking venture at the Travelodge® at 1011 Oak

---

[2] Wyndham Hotels and Resorts, 2019 Social Responsibility Report: Protecting Our Human Rights (p.30) available at https://corporate.wyndhamhotels.com/wp-content/uploads/2019/07/Wyndham-GRI-2019-Final_web.pdf (last visited Mar. 25, 2021).

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

Street in Bakersfield, California.

**D. Defendant Vagabond Inn Corporation**

27. Defendant Vagabond Inn Corporation (hereinafter "Vagabond Corp.") is a western United States hotel company and offers public lodging services through its corporate owned and franchise locations. It is a California corporation with its headquarters in El Segundo, California and can be served via its registered agent, Theodore J. Cohen, located at 1230 Rosecrans Avenue, Suite 600, Manhattan Beach, California, 90266.

28. Vagabond Inn® brand hotels are Vagabond Corp. hotels.

29. As a hotel operator, Defendant Vagabond Corp. controls the training and policies for its hotels including the Vagabond Inn® hotel where S.G. was trafficked.

30. Defendant Vagabond Corp. maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Vagabond Corp. brand standards and all local, state, and federal laws.[3]

31. By and through its relationship with the staff at the Vagabond Inn® hotel where S.G. was trafficked and the hotel guest perpetrator who trafficked her at the Vagabond Inn® hotel, Defendant Vagabond Corp. knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

32. Vagabond Corp. receives a percentage of the gross room revenue from the money generated by the operations of all Vagabond Inn® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

33. Vagabond Corp. owns, supervises, and/or operates the Vagabond Inn® at 3205 Harbor Boulevard in Costa Mesa, California under its Vagabond Inn® brand.

34. Vagabond Corp. is subject to the jurisdiction of this Court because it regularly transacts business in California, operates dozens of hotels in California, contracts to supply

---

[3] Vagabond Inn, About Us available at https://www.vagabondinn.com/about-us (last visited Mar. 26, 2021).

AMENDED COMPLAINT                                  Case No. 8:21-CV-00955-PSG-KES

services in California, caused indivisible injuries to the Plaintiff in California, and knowingly profited from an illegal sex trafficking venture at the Vagabond Inn® at 3205 Harbor Boulevard in Costa Mesa, California.

35.    Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

36.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000).

37.    Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendants reside in this district and because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

38.    Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

39.    To better understand the mechanism by which sex trafficking is prohibited by federal criminal law, it is best to address these elements in the reverse. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can then be divided into the two (2) elements remaining: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while

6

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

40.    Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

41.    Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking. This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work ***and*** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[4]

## A.  THE HOSPITALITY INDUSTRY PARTICIPATES IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-   The Polaris Project* [5]

42.    Human trafficking is the world's fastest growing crime.[6] While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of ***all*** illegal drugs.[7]

[4] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law ***both*** categories are 'traffickers.'

[5] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited Mar, 25, 2021).

[6] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.

[7] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR

AMENDED COMPLAINT                              Case No. 8:21-CV-00955-PSG-KES

43.    Sex traffickers, or 'pimps,' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

44.    The hospitality industry plays a crucial role in the sex trade.[8] The trope of the "no-tell, motel" is certainly not a new one. Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

45.    According to National Human Trafficking Hotline statistics, hotels are the top reported venue, even over commercial front brothels, where sex trafficking acts occur.[9] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

46.    Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex. This is referred to as an 'in call.'

47.    Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (*i.e.* those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels. In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[10]

ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.

[8] Giovanna L. C. Cavagnaro, Sex Trafficking: The Hospitality Industry's Role and Responsibility, Cornell University School of Hotel Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[9] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.

[10] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION

AMENDED COMPLAINT                                      Case No. 8:21-CV-00955-PSG-KES

48. The problem is industry wide. In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[11]

49. Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[12] Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

50. Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

51. But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from dangers that were known or should have been known, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[13]

52. Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal, not to mention moral, obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively

(2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[11] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).

[12] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited Mar, 25, 2021).

[13] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

9

AMENDED COMPLAINT                                   Case No. 8:21-CV-00955-PSG-KES

utilized, numerous well-researched trainings and toolkits have been published over the last decade to help hotel staff in every position to identify the signs.[14]

53.    From check-in to check-out, there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

54.    Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[15]

55.    Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[16] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

56.    Hospitality companies can and should mandate that *all* staff working at *all*

---

[14] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[15] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[16] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

10
AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

hotel properties across their brand complete sex trafficking training.[17]

57.    In 2008, 18 U.S.C. § 1595 effectively required all companies with a peculiar proximity to human trafficking to use reasonable measures and conduct proactive audits to ensure that they were not profiting from what they *should know* are human trafficking ventures.

58.    The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

59.    In 2011, Wyndham trained only some of its employees to look for signs of trafficking.[18]

60.    In 2012, an anti-trafficking coalition alerted Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[19]

61.    Marriott International claims it amended its Human Rights Policy as early as 2006 to reflect growing concerns regarding human trafficking and reviews the policy annually. To date the policy merely states "Marriott supports the elimination of all forms of forced, bonded or compulsory labor and provides associate training on human trafficking awareness and prevention."[20]

---

[17] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[18] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.

[19] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited Mar, 25, 2021).

[20] Our Commitment to Human Rights, MARRIOTT INTERNATIONAL INC. available at https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsCommitment.pdf (last visited Mar, 25, 2021) citing Marriott International, Inc.'s Human Rights Policy Statement available at

---

AMENDED COMPLAINT

Case No. 8:21-CV-00955-PSG-KES

62.    In 2013, IHG commissioned an external assessment of human rights risks most relevant for the travel and hospitality sector globally and regionally working with external human rights experts, Maplecroft. The risks identified included human trafficking.[21]

63.    In 2015 and 2016, IHG identified the modern slavery risks most relevant to IHG across four different areas of risk: (i) risks of modern slavery affecting their organization including IHG hotels, (ii) risks of modern slavery occurring in IHG corporate or hotel supply chains, (iii) risks of modern slavery such as human trafficking occurring in or around IHG branded hotels, (iv) risks of modern slavery occurring at different stages of the hotel lifecycle. IHG represents that its various risk assessment mechanisms have helped it to identify higher risk locations since 2013.[22]

64.    In 2016, Starwood Hotels and Resorts, Inc. first updated its 2007 Human Rights Policy to include language and attention specific to sex trafficking.[23]

65.    Choice Hotels has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT (End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes) developed a training module in 2010 for hotel management and staff.[24]

66.    Further, nationwide campaigns recognized the issue of human trafficking in

https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsStatement.pdf (last visited Mar, 25, 2021).

[21] Inter-Continental Hotel Group, Modern Slavery Statement 2017 available at https://www.ihgplc.com/-/media/ihg/Files/pdf/modern-slavery-statement-2017-ihg-010318.ashx?la=en&hash=B688F42E878C145EC5C8C9DF02ABC227 (last visited Mar, 25, 2021).

[22] *Id.*

[23] Promoting Human Rights is Part of Starwood's Strategy, September 21, 2016, HOTEL BUSINESS, https://togo.hotelbusiness.com/article/promoting-human-rights-is-part-of-starwoods-strategy/ (last visited Mar, 25, 2021).

[24] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited Mar, 25, 2021).

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[25] These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[26]

67.     Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they repeatedly fail to heed the call or repeatedly fail to execute their own policies. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

## B. THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

68.     Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by the franchisee or a third-party management company under the brands' control. In return, the parent brand then gets to exchange the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning only a contract or franchise agreement and still profit from putting heads in beds.

69.     The average consumer does not see this relationship. The parent brand gives the franchisee property its identity. It provides signage on and in front of the building that assures customers that if they check into that hotel, they can expect the standards consistent with the parent hotel brand. The same brand that is emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

70.     In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS), and other online travel agency databases, the brand

---

[25] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

[26] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited Mar, 25, 2021).

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[27]

71. The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

72. Per the franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

73. At the time of the incidents alleged herein:

a. Defendant Choice Hotels International, Inc. owned and controlled the Comfort® brand which includes Comfort Inn & Suites® hotels.

b. Defendant Wyndham Hotels and Resorts, Inc., owned and controlled the Travelodge® brand.

c. Defendant Vagabond Inn Corporation owned and controlled the Vagabond Inn® brand.

74. Parent hotel brands may kick delinquent hotels out of their system, but it is at the expense of terminating their royalty payments, so it is seldom done.

## C. DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

75. Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation have been on notice of repeated incidences of sex trafficking occurring at their Comfort Inn & Suites®, Travelodge®, and Vagabond Inn® hotels yet the brand managers failed to take the necessary action to prevent sex trafficking and still persist

---

[27] Ellen Meyer, The Origins and Growth of Franchising in the Hotel Industry, Lodging Magazine (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/

14

AMENDED COMPLAINT                              Case No. 8:21-CV-00955-PSG-KES

in failing to take the necessary action to prevent sex trafficking at their hotels.

## 1. CHOICE HOTELS INTERNATIONAL, INC. ("CHOICE")

76. Defendant Choice owns, supervisors, and/or operates the Comfort Inn & Suites® at 2485 Hotel Circle Place in San Diego, California.

77. Choice failed to implement and enforce any of its own policy or policies and protect Plaintiff S.G. from being sex trafficked.

78. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice has repeatedly failed to stop these actions.

79. Upon information and belief, Defendant Choice exercises control over Comfort Inn & Suites® hotels by:

a. distributing information to assist employees in identifying human trafficking;

b. providing a process for escalating human trafficking concerns within the organization;

c. requiring employees to attend training related to human trafficking;

d. providing new hire orientation on human rights and corporate responsibility;

e. providing training and education to Comfort Inn & Suites® hotels through webinars, seminars, conferences, and online portals;

f. developing and holding ongoing training sessions on human trafficking; or

g. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

80. Choice was in an actual or apparent agency relationship with Comfort Inn & Suites® hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Choice's exercise of an ongoing and systemic right of control over Comfort Inn & Suites® hotels by Defendant Choice's operations, including the means

and methods of how Comfort Inn & Suites® hotels conducted daily business through one or more of the following actions:

      a.     hosting online bookings on Defendant Choice's domain;

      b.     requiring Comfort Inn & Suites® hotels to use Defendant Choice's customer rewards program;

      c.     setting employee wages;

      d.     making employment decisions;

      e.     advertising for employment;

      f.     sharing profits;

      g.     standardized training methods for employees;

      h.     building and maintaining the facility in a manner specified by the owner;

      i.     standardized or strict rules of operation;

      j.     regular inspection of the facility and operation by owner;

      k.     fixing prices; or

      l.     other actions that deprive Comfort Inn & Suites® hotels of independence in business operations.

81.     An actual and/or apparent agency also exists between Defendant Choice and Comfort Inn & Suites® by Choice Hotels. Defendant Choice holds out Comfort Inn & Suites® hotels to the public as possessing authority to act on its behalf.

82.     Given Defendant Choice's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Comfort Inn & Suites® hotels, Defendant Choice breached its duties in the following ways:

      a.     Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

      b.     Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

      c.     Failed (altogether or adequately) to mandate managers, employees, or

AMENDED COMPLAINT           Case No. 8:21-CV-00955-PSG-KES

owners attend training related to human trafficking;

d.     Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

e.     Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

f.     Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

g.     Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

83.     For years, Defendant Choice has failed to address the rampant culture of sex trafficking which tragically occurs throughout its Comfort Inn & Suites® hotels across the country. Defendant Choice has demonstrated deeply entrenched apathy to the real risk of sex trafficking and pervasive willful blindness to the role its Comfort Inn & Suites® hotels play in sex trafficking. This entrenched, willful blindness facilitated the sex trafficking of Plaintiff S.G. at a Comfort Inn & Suites® hotel that forms the basis of this complaint.

84.     Plaintiff is informed and believes that Defendant Choice is aware of the sex trafficking that occurs throughout its brand hotels by way of monitoring crime on its properties that is posted and publicly available on various news websites.

a.     In August 2013, the general manager and former manager of a Comfort Inn® in Wethersfield, Connecticut were arrested for facilitating and promoting prostitution at the hotel.[28] Two accounts in an arrestees' affidavit allege "'everyone at the Comfort Inn' knew about the prostitution."[29]

b.     In October 2019, a man was charged with rape, strangulation, and

---

[28] https://www.nbcconnecticut.com/news/local/police-say-wethersfield-hotel-promoted-prostitution/62730/

[29] https://www.fox61.com/article/news/local/outreach/awareness-months/affidavit-hotel-overrun-and-infested-with-prostitution/520-347e4ad8-2a25-400a-b1d1-c11a784641c5

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

sexual assault after sex trafficking a woman at a Comfort Suites® in Bethlehem, Pennsylvania.[30]

c.      In September 2020, fifteen gang members were indicted for running a drug and sex trafficking ring out of an entire floor of a Comfort Inn & Suites® in Baltimore, Maryland.[31]

d.      In January 2021, a man was charged with sex trafficking a 14-year-old girl and another victim at a Comfort Inn & Suites® in North Dallas, Texas.[32]

85.    In January of 2008, Choice adopted a Human Rights Policy. In doing so, Choice "commit[ted] to raising awareness of this issue among the owners and staff at our franchised hotels."[33]

86.    On November 10, 2009, a young child was sold for sex, raped, and killed at a Comfort Inn® in Fayetteville, North Carolina.[34] Outraged, over four thousand child advocates petitioned Defendant Choice to actively prevent sex trafficking in its hotels.[35] Six years later, in November 2015, Defendant Choice launched an online training to educate its management and staff on prevention of sex trafficking.[36] Choice boasts that this training has been completed at least 29,543 times by management and staff at their franchisees.[37]

87.    Choice makes the Blue Campaign Toolkit available to management and staff

---

[30] https://www.lehighvalleylive.com/bethlehem/2017/12/rape_charges_piling_up_for_all.html

[31] https://wtop.com/anne-arundel-county/2020/09/15-suspected-md-gang-members-indicted-after-drug-ring-discovered-at-comfort-inn/

[32] https://www.dallasnews.com/news/crime/2021/01/28/man-sold-14-year-old-for-sex-out-of-far-north-dallas-hotel-feds-say/

[33] https://www.choicehotels.com/about/responsibility/human-rights-policy

[34] https://www.wral.com/warrants-girl-abducted-raped-killed-on-same-day/6464217/

[35] https://www.change.org/p/tell-choice-hotels-to-prevent-child-prostitution-in-their-hotels (Advocates urged, "Companies like Choice Hotels, the parent company of the Comfort Inn where Shaniya was sold, have the power to help prevent [sex trafficking].").

[36] https://www.choicehotels.com/about/responsibility/human-rights-policy

[37] *Id.*

18

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

of franchisees.[38]

88.    In addition to its training efforts, Choice is in ongoing communication with its franchisee management and staff by including articles about human trafficking in newsletters, announcements at annual conferences, and alerts to hotels in high-risk areas or in proximity to high-risk events.[39]

89.    Choice brags that it mobilizes "field-based associates" who visit hotels specifically to discuss human trafficking and how to combat it.[40]

90.    Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Choice's corporate policies regarding trafficking integrated ongoing education in many formants to teach franchisee management and staff to identify signs of sex trafficking.

91.    Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Choice's corporate policies required franchisee management and staff to report signs of sex trafficking at the franchisee location to Defendants.

92.    Plaintiff is informed and believes that that at the time of Plaintiff's trafficking, Defendant Choice received and regularly monitors these reports.

93.    Through such review and monitoring, Defendant Choice has been aware of sex trafficking occurring at Comfort Inn & Suites® hotels across its brand and specifically aware of the sex trafficking of S.G. at the Comfort Inn & Suites® hotel that forms the basis of this complaint.

## 2.  WYNDHAM HOTELS AND RESORTS, INC. ("WYNDHAM")

94.    Defendant Wyndham owns, supervises, and/or operates the Travelodge® at 1011 Oak Street in Bakersfield, California.

95.    Wyndham failed to implement and enforce any of its own policy or policies and protect Plaintiff S.G. from being sex trafficked.

---

[38] *Id.*

[39] https://www.choicehotels.com/about/responsibility/human-rights-policy

[40] *Id.*

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

96. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Wyndham has repeatedly failed to stop these actions.

97. Defendant Wyndham may exercise control over Travelodge® hotels by:

a. distributing information to assist employees in identifying human trafficking;

b. providing a process for escalating human trafficking concerns within the organization;

c. requiring employees to attend training related to human trafficking;

d. providing new hire orientation on human rights and corporate responsibility;

e. providing training and education to Travelodge® hotels through webinars, seminars, conferences, and online portals;

f. developing and holding ongoing training sessions on human trafficking; or

g. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

98. Wyndham was in an actual or apparent agency relationship with Travelodge® hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Wyndham's exercise of an ongoing and systemic right of control over Travelodge® hotels by Defendant Wyndham's operations, including the means and methods of how Travelodge® hotels conduct daily business through one or more of the following actions:

a. hosting online bookings on Defendant Wyndham's domain;

b. requiring Travelodge® hotels to use Defendant Wyndham's customer rewards program;

c. setting employee wages;

d. making employment decisions;

20

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

e.    advertising for employment;

f.    sharing profits;

g.    standardized training methods for employees;

h.    building and maintaining the facility in a manner specified by the owner;

i.    standardized or strict rules of operation;

j.    regular inspection of the facility and operation by owner;

k.    fixing prices; or

l.    other actions that deprive Travelodge® hotels of independence in business operations.

99.    An actual and/or apparent agency also exists between Defendant Wyndham and Travelodge® hotels. Defendant Wyndham holds out Travelodge® hotels to the public as possessing authority to act on its behalf.

100.    Given Defendant Wyndham's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Travelodge® hotels, Defendant Wyndham breached its duties in the following ways:

a.    Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

b.    Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

c.    Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

d.    Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

e.    Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

f.    Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

g.      Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

101.   For years, Defendant Wyndham has failed to address the rampant culture of sex trafficking which tragically occurs throughout its Travelodge® hotels across the country. Defendant Wyndham has demonstrated deeply entrenched apathy to the real risk of sex trafficking and pervasive willful blindness to the role its Travelodge® hotels play in sex trafficking. This entrenched, pervasive willful blindness facilitated the sex trafficking of Plaintiff S.G. at a Travelodge® hotel that forms the basis of this complaint.

102.   Plaintiff is informed and believes that Defendant Wyndham is aware of the sex trafficking that occurs throughout its brand hotels by way of regularly monitoring customer reviews of its properties posted and publicly available on various online review websites as well as notifications of crime on its properties posted and publicly available on various news websites.

a.      In April 2011, the owners and operators of a Travelodge® in Oceanside, California were federally indicted for facilitating and profiting from the sex trafficking of minors and adults within the hotel.[41]

b.      In November 2020, the manager and a maintenance worker at a Travelodge® in Colorado Springs, Colorado were arrested for human trafficking for sexual servitude and pimping. Investigation revealed that the two were running a prostitution ring out of rooms within the hotel.[42]

c.      In 2014, after over 20 arrests were made at a Mission Valley Travelodge®, the city of San Diego ordered the hotel to crackdown on the commercial sex trade at its hotel by increasing the hours for onside security, installing more security cameras, and posting signs warning of criminal activity.

[41] https://www.justice.gov/archive/usao/cas/2011/cas11-0418-Traylor.pdf
[42] https://coloradosprings.gov/police-department/article/news/human-trafficking-arrests-travelodge

AMENDED COMPLAINT                              Case No. 8:21-CV-00955-PSG-KES

d.     In March 2010, a high-profile personal injury lawyer was arrested at a Travelodge® in Petersburg, Virginia on charges of soliciting prostitution.[43]

e.     Additionally, Defendant Wyndham has been aware of sex trafficking on Travelodge® brand properties through publicly available websites such as www.tripadvisor.com. Online reviews further demonstrate Defendant Wyndham's willful blindness to the role Travelodge® hotels play in sex trafficking.

i.     Regarding a July 2009 stay at the Travelodge® in Sandusky, Ohio, a customer described the hotel as "Great Value…for Prostitutes/Drug Dealers to do business!"[44]

ii.     Regarding a July 2010 stay at the Travelodge® in Bakersfield, California, a customer wrote, "The next door neighbors were crack heads banging, yelling and fighting. Looks as though the local shaddy clients 'use' this place."[45]

iii.     Regarding a March 2012 stay at the Travelodge® in Bakersfield, California, a customer wrote, "of all the people above me seemed like they were the neighborhood dealers and as i tried to get my ball from them that i got stuck on there porch they didn't speak english and wouldn't even open the door and as i went back down to my room there was a black Mercedes in the back parking lot and all the windows were tinted and the guy was just sitting there for hours."[46]

iv.     Regarding a February 2012 stay at the Travelodge® in Queens, New York, a customer described the hotel as "Prostitute central" and recounted, "Checked in for an overnight stay before leaving from Kennedy airport.

[43] https://www.styleweekly.com/richmond/top-lawyer-arrested-for-soliciting-prostitute/Content?oid=1383889
[44] https://www.tripadvisor.com/ShowUserReviews-g50940-d101097-r35997135-Travelodge_Lake_Erie_Sandusky-Sandusky_Ohio.html
[45] https://www.yelp.com/biz/travelodge-by-wyndham-bakersfield-bakersfield
[46] *Id.*

23

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

Had a young lady before be (sic) checking in asking for extra sheets, hmmm. After getting in to our room we heard activities (if you know what I mean) going on in the room next to us all night along with arguing, etc. when checking out there was a "young lady" arguing with the police at the counter. Don't tell me the management doesn't know what's going on here. Do yourself a favor and find another place to stay."[47]

v.  Regarding a June 2016 stay at the Travelodge® in Fort Meyers, Florida, a customer wrote, "This place is dirty. And plus the prostitutes and druggies that I saw was nasty. Even the maintenance man lives there and had prostitutes and drug addicts in his room. Horrible place!!"[48]

vi.  Regarding an April 2017 stay at a Travelodge® in West Springfield, Massachusetts, a customer wrote, "Prostitution is bad bad here all week long and the week end is worse!do not stay here! No sleep from people make so much noise,in the rooms and out side. Management does nothing to combat it! Could be a nice place if they clean it up, prostitution, and drugs ect. Police needs to stake it out" (sic).[49]

103. In 2007, Defendant Wyndham's predecessor's parent company published its Human Rights Policy Statement; a commitment to principles and processes that Defendant continues to effectuate.[50]

104. Defendant Wyndham has in place business principles and directives to help eliminate the potential use of brand properties for trafficking.[51]

105. Defendant Wyndham has in place accountability measures to monitor and

---

[47] https://www.tripadvisor.com/ShowUserReviews-g48355-d1474489-r125023778-Travelodge_by_Wyndham_Ozone_Park-Ozone_Park_Queens_New_York.html
[48] https://www.tripadvisor.com/ShowUserReviews-g34230-d84533-r390411430-Travelodge_by_Wyndham_Fort_Myers-Fort_Myers_Florida.html
[49] https://www.tripadvisor.com/ShowUserReviews-g41916-d1382745-r472028362-Travelodge_West_Springfield-West_Springfield_Massachusetts.html
[50] https://corporate.wyndhamhotels.com/modern-slavery-statement/
[51] *Id.*

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

report on franchisees' compliance with these principles and directives.[52]

106.   Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Wyndham's corporate policies regarding trafficking integrated an educational element to teach franchisee management and staff to identify signs of sex trafficking.

107.   Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Wyndham's corporate policies required franchisee management and staff to report signs of sex trafficking at the franchisee location to Defendant.

108.   Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Wyndham received and regularly monitored these reports.

109.   Through such review and monitoring, Defendant Wyndham has been aware of sex trafficking occurring at Travelodge® hotels across its brand and specifically aware of the sex trafficking of S.G. at the Travelodge® hotel that forms the basis of this complaint.

**3.   VAGABOND INN CORPORATION ("VAGABOND CORP.")**

110.   Defendant Vagabond Corp. owns, supervises, and/or operates the Vagabond Inn® at 3205 Harbor Boulevard in Costa Mesa.

111.   Vagabond Corp. failed to implement and enforce any of its own policy or policies and protect Plaintiff S.G. from being sex trafficked.

112.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Vagabond Corp. has repeatedly failed to stop these actions.

113.   Plaintiff is informed and believes that Defendant Vagabond Corp. exercises control over Vagabond Inn® hotels by:

a.   distributing information to assist employees in identifying human trafficking;

b.   providing a process for escalating human trafficking concerns within the organization;

[52] https://corporate.wyndhamhotels.com/wp-content/uploads/2020/10/Human_Rights_Policy_Statement_FINAL_09302020.pdf

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

c.    requiring employees to attend training related to human trafficking;

d.    providing new hire orientation on human rights and corporate responsibility;

e.    providing training and education to Vagabond Inn® hotels through webinars, seminars, conferences, and online portals;

f.    developing and holding ongoing training sessions on human trafficking; or

g.    providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

114.    Vagabond Corp. was in an actual or apparent agency relationship with Vagabond Inn® hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Vagabond Corp.'s exercise of an ongoing and systemic right of control over Vagabond Inn® hotels by Defendant Vagabond Corp.'s operations, including the means and methods of how Vagabond Inn® hotels conducted daily business through one or more of the following actions:

a.    hosting online bookings on Defendant Vagabond Corp.'s domain;

b.    requiring Vagabond Inn® hotels to use Defendant Vagabond Corp.'s customer rewards program;

c.    setting employee wages;

d.    making employment decisions;

e.    advertising for employment;

f.    sharing profits;

g.    standardized training methods for employees;

h.    building and maintaining the facility in a manner specified by the owner;

i.    standardized or strict rules of operation;

j.    regular inspection of the facility and operation by owner;

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

k.    fixing prices; and/or

l.    other actions that deprive Vagabond Inn® hotels of independence in business operations.

115.    An actual and/or apparent agency also exists between Defendant Vagabond Corp. and Vagabond Inn® hotels. Defendant Vagabond Corp. holds out Vagabond Inn® hotels to the public as possessing authority to act on its behalf.

116.    Given Defendant Vagabond Corp.'s public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its hotels, including Vagabond Inn® hotels, Vagabond Corp. breached its duties in the following ways:

a.    Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

b.    Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

c.    Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

d.    Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

e.    Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

f.    Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

g.    Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

117.    For years, Defendant Vagabond Corp. has failed to address the rampant culture of sex trafficking which tragically occurs throughout its Vagabond Inn® hotels across the country. Defendant Vagabond Corp. has demonstrated deeply entrenched apathy

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

to the real risk of sex trafficking and pervasive willful blindness to the role its Vagabond Inn® hotels play in sex trafficking. This entrenched, pervasive willful blindness facilitated the sex trafficking of Plaintiff S.G. at a Vagabond Inn® hotel that forms the basis of this complaint.

118. Plaintiff is informed and believes that Defendant Vagabond Corp.'s awareness of the sex trafficking that occurs throughout its brand hotels and specifically of the sex trafficking that occurred at its Vagabond Inn® Costa Mesa property at the time S.G. was trafficked by way of regularly monitoring customer reviews of its properties posted and publicly available on various online review websites.

a.      Regarding an October 2008 stay at the Vagabond Inn® in Costa Mesa, California, a customer titled the review, "Very Unsafe!!! Worst Hotel I've Ever Stayed At!" The customer wrote, "Apparently there was a man staying there who had five rooms rented throughout the hotel. The police actually showed up to investigate. Prostitution...? The walls are paper thin and there is was no possibility of getting a good nights sleep. The second night we were there I was awakened by the sound of a woman screaming and banging on the door next to us. A little while later I heard a strange noise coming from outside our door. Apparently someone had punched in a window and there was blood and broken glass everywhere. I checked out the next day and the staff acted as if I were the problem. This is a very unsafe place to stay."[53]

b.      Regarding an August 2010 stay at the Vagabond Inn® in Costa Mesa, California, a customer titled the review, "Stay Away! Hotel is filled with prostitutes!" The customer wrote, "In our second night, while standing outside of our room (which was directly in front of the parking lot), I was propositioned by a man offering to pay me for sex. I DO NOT look or dress the a prostitute. This man repeatedly propositioned me for sex and would not leave after I asked him to

[53] https://www.tripadvisor.com/ShowUserReviews-g32253-d84718-r20857617-Vagabond_Inn_Costa_Mesa_Orange_County_Airport-Costa_Mesa_California.html

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

numerous times. I had to call the cops but by the time they got to the hotel the man was gone. The officer then proceeded to inform us that the Vagabond in is notorious for prostitution and that there are a number of known prostitutes living in the hotel."[54]

c.    Regarding a June 2010 stay at the Vagabond Inn® in Costa Mesa, California, a customer wrote, "We saw 2 police cars coming out of the hotel parking lot when we booked in, perhaps that should have told us something! Didn't feel a safe area at all."[55]

119.   Defendant Vagabond Corp. recently partnered with a property management company to streamline its franchisee-informed reporting and monitoring system.[56] Prior, Defendant also received and monitored real-time reports of bookings, arrivals, departures, housekeeping, maintenance, guest balances, shift, and clerk activity, but data was available next day.[57]

120.   As a franchisor, Defendant is aware that human trafficking occurs throughout its brand hotels. Yet, currently, Defendant has no public policy addressing its stance on human trafficking. Defendant's failure to publish such a policy demonstrates its decision to turn a blind eye to the sex trafficking that it knows–by monitoring internal reports and public guest reviews–occurs at its brand properties and specifically occurred at the Costa Mesa location that forms the basis of this complaint.

121.   Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Vagabond Corp.'s corporate policies required franchisee management and staff to report happenings such as complaints, suspicious discoveries by housekeeping, and

[54] https://www.tripadvisor.com/ShowUserReviews-g32253-d84718-r73496168-Vagabond_Inn_Costa_Mesa_Orange_County_Airport-Costa_Mesa_California.html
[55] https://www.tripadvisor.com/ShowUserReviews-g32253-d84718-r67420475-Vagabond_Inn_Costa_Mesa_Orange_County_Airport-Costa_Mesa_California.html
[56] https://www.hotelkeyapp.com/pages/abouts/enterprises/vagabond_inn.html
[57] https://www.hotelkeyapp.com/pages/products/pms/reports.html; https://www.hotelkeyapp.com/pages/abouts/enterprises/vagabond_inn.ht

29

AMENDED COMPLAINT                          Case No. 8:21-CV-00955-PSG-KES

guest check-in information to Defendant.

122.   Plaintiff is informed and believes that at the time of Plaintiff's trafficking, Defendant Vagabond Corp. received and regularly monitored reports from franchisees.

123.   Through such review and monitoring, Defendant Vagabond Corp. has been aware of sex trafficking occurring at Vagabond Inn hotels across its brand and specifically aware of the sex trafficking of S.G. at the Vagabond Inn® hotel that forms the basis of this complaint.

### D.  THE SEX TRAFFICKING OF S.G.

124.   The facts alleged herein stem from a human trafficking and prostitution ring operated throughout Southern California and in Everett, Washington. While victimized by her trafficker, S.G. was subject to repeated instances of physical abuse, rape, exploitation, psychological torment, kidnapping and imprisonment, and false imprisonment at the Defendants' hotels from 2009 through 2011.

125.   In 2009, S.G. was 15 years old, living in Texas, when she was coerced into a partnership with a man who would become one of her traffickers. The man befriended S.G. and offered to take her on a vacation to California. The man took S.G. to California where S.G. had nowhere to stay and no identification to leave. He brought S.G. to another man, her next trafficker, who would go on to traffic S.G. for years.

126.   From 2009 through 2011, S.G. was required by her trafficker to have sex for payment with various buyers at the Defendants' hotels in response to advertisement for commercial sex that he had posted on www.craigslist.com and www.backpage.com without her consent.[58]

---

[58] Backpage.com was the leading online marketplace for commercial sex, until it was seized by the federal authorities in April2018. Backpage.com operated in 97 countries and 943 locations worldwide—and was last valued at more than a half-billion dollars. See Backpage.com's Knowing Facilitation of Online Sex Trafficking, Staff Report, Permanent Subcommittee on Investigations, United States Senate (2018), https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf

AMENDED COMPLAINT                                Case No. 8:21-CV-00955-PSG-KES

127.    S.G. tried to escape her trafficker to no avail. She finally escaped in 2011 after a regular buyer helped her book a hotel room to flee.

128.    Prior to, during and following the incidents described herein, the Defendants had actual and/or constructive notice of prostitution and/or general safety concerns at their hotel including, but not limited to, video surveillance of their hotels, as well as firsthand observation by hotel staff of said suspicious activity. The Defendants failed to take any actions to curtail these activities.

129.    Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of S.G.

**i. THE SEX TRAFFICKING OF S.G. AT COMFORT INN & SUITES®**

130.    S.G. was kept at the Comfort Inn & Suites® in San Diego, California for two weeks.

131.    S.G. paid for extra days at the hotel when needed. S.G. paid the front desk with cash. S.G. was never asked for her age or a form of identification.

132.    Every day, S.G. or her trafficker asked hotel staff for extra towels, sheets, and other supplies. S.G.'s trafficker refused all housekeeping services at the hotel.

133.    Every day, S.G.'s trafficker engaged in drug use that emitted an odor and never received an inquiry from hotel staff.

134.    S.G.'s trafficker used the hotel's WiFi network to advertise S.G. on Craigslist.com and Backpage.com for commercial sex.

135.    At that time, S.G. was forced to service six to ten Johns per day at the hotel who each entered the Defendants' hotel as a non-paying guest and leaving shortly thereafter. S.G. would meet a John in the hotel parking lot. From there, S.G. and the John walked through the lobby to the hotel room. S.G.'s trafficker stayed at the hotel with S.G. but exited the hotel and sat in his car while S.G. was forced to service a John. The foot traffic to and from the hotel room where S.G.'s trafficker harbored her was constant and voluminous.

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

### ii. THE SEX TRAFFICKING OF S.G. AT TRAVELODGE®

136.   S.G. was kept at the Travelodge® in Bakersfield, California for seven or eight months in total in month-long increments. The room was paid for daily and S.G. was forced to service at least fifteen Johns a day. Sometimes, a car queue would form in the hotel parking lot of up to five Johns waiting to be serviced. Hotel staff never inquired about the amount of incoming and outgoing traffic.

137.   S.G. threw out many condoms in the trash for housekeeping services to remove. Every day, S.G. asked for extra towels and sheets.

138.   A maintenance staff member offered S.G. money for sex.

139.   S.G.'s trafficker used the hotel's WiFi network to advertise S.G. on Craigslist.com and Backpage.com for commercial sex.

### iv. THE SEX TRAFFICKING OF S.G. AT VAGABOND INN®

140.   S.G. was kept at the Vagabond Inn® in Costa Mesa, California. S.G.'s trafficker often harbored S.G. at the hotel. The first stay lasted two weeks. After that, S.G.'s trafficker kept her at the hotel in two week increments with two-day breaks in between stays.

141.   S.G. was forced to service at least six to ten Johns a day at the hotel who each entered the Defendants' hotel as a non-paying guest and left shortly thereafter.

142.   S.G.'s trafficker paid for the hotel room daily and in cash. S.G.'s trafficker always booked a room at the back of the hotel. Every day, S.G. or her trafficker would ask hotel staff for extra towels, toilet paper, cups, and sheets. S.G.'s trafficker refused housekeeping services while he had S.G. servicing a John. S.G.'s trafficker allowed housekeeping take out the room's trash that was always full with condom wrappers.

143.   S.G.'s trafficker used the hotel's WiFi network to advertise S.G. on Craigslist.com and Backpage.com for commercial sex.

144.   S.G. tried to escape her trafficker. As punishment, S.G.'s trafficker violently beat her in the car on the way back to the hotel. When S.G. and her trafficker returned to the hotel, S.G. had bruises on her face. The next day, bruised and beaten S.G. went in-

person to ask hotel staff for extra towels.

145. While harbored at the hotel, S.G. had frequent interactions with hotel staff and got to know them quite well. Hotel staff never inquired to S.G. about her injuries. Hotel staff never notified S.G. of noise complaints or commented on the frequent incoming and outgoing traffic.

146. While in her trafficker's custody, S.G. was arrested for prostitution during an FBI sting at the hotel. Afterwards, the hotel did not ban S.G. from returning.

## E. THE DEFENDANTS FACILITATED THE TRAFFICKING OF S.G.

147. Defendants Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation profited from the sex trafficking of S.G. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to S.G.'s trafficker for weeks to months at a time, when they knew, or should have known, that he was using their room to imprison S.G. and subject her to repeated exploitation as he forced her into sexual servitude.

148. Defendants Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation knew, or should have known, that S.G. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because S.G.'s trafficker frequented the Defendants' hotels.

149. Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation knew, or should have known, that S.G. was being trafficked because S.G.'s trafficker paid for his room using cash, reserved his room for an extended stay, refused all housekeeping services or requested services to dispose of trash filled with condoms, frequently requested extra towels and sheets, constantly entertained traffic from 6-15 male visitors a day, and checked in with a young woman; behavior that indicated he was using the Defendants' hotels for his illegal sex trafficking venture.

150. Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation actively participated in this illegal endeavor by knowingly providing lodging to S.G.'s trafficker in which to harbor S.G. while he was trafficking her.

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

151.   Choice Hotels International, Inc., Wyndham Hotels and Resorts, Inc., and Vagabond Inn Corporation profited from the sex trafficking of S.G. and knowingly aided and participated with S.G.'s trafficker in his criminal venture. The Defendants took no action as S.G. repeatedly visited the hotel, displayed prominent bruising on her person, and entered and exited the hotel room with multiple Johns on a daily basis.

152.   The Defendants all had the opportunity to stop S.G.'s trafficker and offenders like him from victimizing S.G. and others like her. Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

153.   The Defendants all financially benefited from the sex trafficking of S.G., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

154.   The Defendants all enjoy the steady stream of income that sex traffickers bring to their budget level hotel brands, such as Comfort Inn & Suites®, Travelodge®, and Vagabond Inn®.

155.   The Defendants financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

156.   The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

157.   The Defendants maintained their deficiencies to maximize profits by:

a.      Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

b.      Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

c.      Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

34

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

158.   As a direct and proximate result of these egregious practices on the part of the Defendants, S.G. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

### CAUSES OF ACTION

### COUNT ONE – 18 U.S.C §1595 ("TVPRA")
### S.G. v. CHOICE HOTELS INTERNATIONAL, INC.

159.   The Plaintiff S.G. incorporates each foregoing allegation.

160.   S.G. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

161.   Defendant Choice Hotels International, Inc.'s acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, Defendant Choice Hotels International, Inc. had a statutory obligation not to benefit financially from a venture that it knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a). At all relevant times, Defendant Choice Hotels International, Inc. breached this duty by participating in, and facilitating, the harboring and providing of S.G. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions.

162.   Defendant Choice Hotels International, Inc. has financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trade. Moreover, Defendant Choice Hotels International, Inc. directly benefitted from the trafficking of S.G. on each occasion it received payment for rooms in which she was kept at the Defendant's hotel. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S.G.'s injuries and damages.

163.   S.G. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendant Choice Hotels International,

AMENDED COMPLAINT                          Case No. 8:21-CV-00955-PSG-KES

Inc.'s hotel and property in violation of 18 U.S.C. §1591 (a).

## COUNT TWO – 18 U.S.C §1595 ("TVPRA")
## S.G. v. WYNDHAM HOTELS & RESORTS, INC.

164.    The Plaintiff S.G. incorporates each foregoing allegation.

165.    S.G. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

166.    Defendant Wyndham Hotels & Resorts, Inc.'s acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, Defendant Wyndham Hotels & Resorts, Inc. had a statutory obligation not to benefit financially from a venture that it knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a). At all relevant times, Defendant Wyndham Hotels and Resorts, Inc. breached this duty by participating in, and facilitating, the harboring and providing of S.G. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions.

167.    Defendant Wyndham Hotels and Resorts, Inc. has financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trade. Moreover, Defendant Wyndham Hotels and Resorts, Inc. directly benefitted from the trafficking of S.G. on each occasion it received payment for rooms in which she was kept at the Defendant's hotel. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S.G.'s injuries and damages.

168.    S.G. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendant Wyndham Hotels and Resorts, Inc.'s hotel and property in violation of 18 U.S.C. §1591 (a).

\\\

\\\

## COUNT THREE – 18 U.S.C §1595 ("TVPRA")
## S.G. v. VAGABOND INN CORPORATION

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

169.    The Plaintiff S.G. incorporates each foregoing allegation.

170.    S.G. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

171.    Defendant Vagabond Inn Corporation's acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, Defendant Vagabond Inn Corporation had a statutory obligation not to benefit financially from a venture that it knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a). At all relevant times, Defendant Vagabond Inn Corporation breached this duty by participating in, and facilitating, the harboring and providing of S.G. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and/or commissions.

172.    Defendant Vagabond Inn Corporation has financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trade. Moreover, Defendant Vagabond Inn Corporation directly benefitted from the trafficking of S.G. on each occasion it received payment for rooms in which she was kept at the Defendant's hotel. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of S.G.'s injuries and damages.

173.    S.G. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendant Vagabond Inn Corporation's hotel and property in violation of 18 U.S.C. §1591 (a).

### PRAYER FOR RELIEF

WHEREFORE on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendants' wrongs and injuries to the Plaintiff due to the Defendants' faulty conduct, including but not limited to:

37

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES

a. All available compensatory damages for the described losses with respect to each cause of action;

b. Past and future medical expenses, as well as the costs associated with past and future life care;

c. Past and future lost wages and loss of earning capacity;

d. Past and future emotional distress;

e. Consequential and/or special damages;

f. All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g. Punitive damages with respect to each cause of action;

h. Reasonable and recoverable attorneys' fees;

i. Costs of this action; and

j. Pre-judgment and all other interest recoverable.

Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated:  April 15, 2022                    MORGAN & MORGAN


By:    /s/ Alan J. Borowsky
                Alan J. Borowsky

                Marie N. Appel (SBN 187483)
                mappel@forthepeople.com
                MORGAN & MORGAN
                COMPLEX LITIGATION GROUP
                711 Van Ness Avenue, Suite 500
                San Francisco, CA 94102
                Telephone: (415) 358-6913
                Facsimile: (415) 358-6293

AMENDED COMPLAINT                    Case No. 8:21-CV-00955-PSG-KES

Alan J. Borowsky
PA ID #308700
aborowsky@forthepeople.com
MORGAN & MORGAN
2005 Market Street, Suite 350
Philadelphia, PA 19103
Telephone: (215) 861-0502
Facsimile: (215) 861-0527

*Attorneys for Plaintiff*

AMENDED COMPLAINT                                    Case No. 8:21-CV-00955-PSG-KES